IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CAROL STREETER o/b/o, ) | |
| JAQUAVIS J. MILTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO.: 04cv1026 |
| v. ) | [WO] |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Carol Streeter ["Streeter"] has filed this action on behalf of her minor son, JaQuavis

Milton ["Milton"], seeking review of a final decision by the Commissioner of Social Security

["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. § 1383(c)(3) (2004).  Upon review of the

record and the briefs submitted by the parties, the court concludes that the Commissioner's

decision should be affirmed.

**I.   FACTS AND PROCEDURAL HISTORY**

Since shortly after his birth and continuing through at least most of his second year,

Milton has been at various times diagnosed with lactose intolerance, severe gastroesophageal

reflux disease ["GER"], reactive airway disease, asthma, respiratory syncytial virus,

pneumonia, bronchiolitis, anemia, bilateral otitis media, severe failure to thrive and

malnutrition (R. 84-240).

Based in large part on his respiratory conditions, GER and what she perceived as his

resultant poor weight gain, Streeter protectively applied for supplemental security income

["SSI"] benefits (R. 66) alleging an onset date of 8 January 2003, Milton's second birthday

(R. 44).  Streeter's initial application was denied (R. 25-30), and she was granted a hearing

before Administrative Law Judge Glay E. Maggard ["ALJ"], who issued an unfavorable

decision (R. 22).  The Social Security Administration's ["SSA"] Appeals Council ["AC"]

denied her request for review of the ALJ's decision (R. 5-7), which consequently became the

final decision of the Commissioner.  Streeter then filed this timely lawsuit (Doc. # 1).


## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one.

Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their]

judgment for that of the [Commissioner]."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.

1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The court

must affirm the Commissioner's decision "if it is supported by substantial evidence and the

correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing

*Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1]  This is true despite the existence

---

[1]In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a
> scintilla, and means such relevant evidence as a
> reasonable mind might accept as adequate to
> support a conclusion.  *See Richardson v. Perales*,
> 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d
> 842 (1971).

of substantial evidence "contrary to the findings of the ALJ." ***Barron v. Sullivan***, 924 F.2d

227, 230 (11th Cir. 1991).  "There is no presumption, however, that the Commissioner

followed the appropriate legal standards in deciding a claim for benefits or that the legal

conclusions reached were valid." ***Miles***, 84 F. 3d at 1400 (citations omitted).

### III.    DISCUSSION

**A.    *Standard for Determining Disability***

A child is considered disabled and, thus, eligible for SSI benefits when he or she "has

a medically determinable physical or mental impairment, which results in marked and severe

functional limitations, and which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §

1382c(a)(3)(C)(I) (2004).  Furthermore, the child cannot be engaged in substantial gainful

activity.  *Id.* at § 1382c(a)(3)(C)(ii).

To determine whether a child claimant is entitled to SSI benefits, the Commissioner

must first determine whether the claimant is engaged in substantial gainful activity.  20

C.F.R. § 4165.924(a) (2005).  If the claimant is not engaged in substantial gainful activity,

the Commissioner next determines whether the claimant has "an impairment or combination

of impairments that is severe."  *Id.*  If the claimant is found to have a severe impairment(s),

the Commissioner will "review [the] claim further to see if [the claimant] ha[s] an

impairment(s) that meets, medically equals, or functionally equals"  a condition described

in the SSA's "Listing of Impairments."  *Id.*; *see also* 20 C.F.R. § 404, subpt. P, app. 1.

**B.**     *Application of the Standard: The ALJ's Findings*

After discussing the legal standards and the evidence in the record, the ALJ made the

following findings:

1.   The claimant's date of birth is January 8, 2001.

2.   The claimant has not engaged in substantial gainful activity.

3.   The medical evidence establishes that the claimant has gastroesophageal reflux leading to failure to thrive, reactive airway disease, malnutrition, and anemia which are "severe" under the Act.

4.   The claimant does not have an impairment that meets or medically equals an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

5.   The claimant does not have severely disabling limitations in specific functions caused by a medically determinable physical or mental impairment.

6.   The claimant does not have disabling limitations resulting from chronic illnesses that are characterized by frequent illnesses or attacks, or exacerbations and remissions.

7.   The claimant does not have disabling limitations resulting from the nature of the treatment required or the effects of medication.

8.   The claimant has the following limitations in the appropriate domains:

   a.   Acquiring and using information – none
   b.   Attending and completing tasks – none
   c.   Interacting and relating with others – none

       d.       Moving about and manipulating objects – none
       e.       Caring for oneself – none
       f.       Health and physical well-being – marked

9.     The claimant's assertions relative to symptomatology, functional limitations and restrictions of activities of daily living have been considered in light of the factors set forth in 20 CFR § 416.929 and SSR 96-7p, and are found to lack corroboration or substantiation in the medical evidence, and are not credible as to a disabling impairment.

10.    The claimant has not been under a "disability" as defined in the Social Security Act, at [sic] any time through the date of this decision (20 CFR § 416.924(d)).

(R. 21).   Thus, Milton failed at the third step because his impairment(s) does not meet or

medically or functionally equal any of the SSA's listings.

Streeter disagrees and contends that Milton's impairments meet or equal listing 100.02

(growth impairment) and/or 105.08 (malnutrition).   § 404, subpt. P, app. 1.   Streeter's

arguments lack merit.

## C.    *Listing of Impairments in General*

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *See* 20 C.F.R. § [416.925](a)-(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § [416.926](a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner then reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *See id.*

***Wilson v. Barnhart***, 284 F.3d 1219, 1224 (11th Cir. 2002).

Regarding medical equivalence, the regulations governing disability determinations state, referring to the claimant,

> (1)(I) If you have an impairment that is described in the Listing of Impairments . . ., but–
>
>> (A) You do not exhibit one or more of the medical findings specified in the particular listing, or
>> (B) You exhibit all of the medical findings, but one or more of the findings is not as severe as specified in the listing;
>
> (ii) We will nevertheless find that your impairment is medically equivalent to that listing *if you have other medical findings related to your impairment that are at least of equal medical significance.*
>
> (2) If you have an impairment that is not described in the Listing of Impairments . . . or you have a combination of impairments, no one of which meets or is medically equivalent to a listing, we will compare your medical findings with those for closely analogous listed impairments.  If the medical findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

20 C.F.R. § 416.926(a) (emphasis added).

Streeter has the burden of proving Milton's impairments meet or equal a listing.  *See*
***Sullivan v. Zebley***, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."); ***Wilkinson ex rel. Wilkinson v. Bowen***, 847 F.2d 660,

662 (11th Cir. 1987) (noting the plaintiff's burden and stating that, "[i]n order to equal a

listing, the medical findings must be at least equal in severity and duration to the listed

findings"); **Bell v. Bowen**, 796 F.2d 1350, 1353 (11th Cir. 1986) (holding that to equal a

listing, a claimant must present "medical evidence which describes how the impairment has

such an equivalency"); **Randolph v. Apfel**, No. Civ. A. 98-0673, 2000 WL 206637, at *4

(S.D. Ala. 2000) ("In order to prove equivalency to a listed impairment, Plaintiff must

provide objective medical findings that support each of the criteria for the impairment under

which he claims equivalency.").[2]


## C.     *Linear Growth Impairment*

Listing 100.02 requires a

> [g]rowth impairment, considered to be related to an additional
> specific medically determinable impairment, and one of the
> following:
>
> > A.     Fall of greater than 15 percentiles in height which
> > is sustained; or
> >
> > B.     Fall to, or persistence of, height below the third
> > percentile.

§ 404, subpt. P, app. 1.

In conclusory fashion, Streeter presupposes that Milton suffers from a "sustained"

linear growth impairment that also satisfies the listing's additional requirements (Doc. # 11-

---

[2]Streeter does not challenge the ALJ's functional equivalence assessment. *See* 20 C.F.R.
§ 416.926a.

1, p. 6).  The evidence, however, reveals no specifically diagnosed linear growth impairment and offers only diagnoses, such as GER, that may or may not lead to such an impairment. Thus, to determine the existence of a growth impairment, a natural prerequisite to meeting the listing's requirements, it is necessary to compare Milton's "current height with at least three previous determinations, including length at birth, if available."  § 404, subpt. P, app. 1, 100.00(A).

The purpose of the comparison is to establish a reduction in growth and growth velocity, the latter of which must persist or be expected to persist for "[a] minimum of 12 continuous months . . . in order to meet the duration requirement."  SSA Programs Operations Manual System ["POMS"] §§ DI 24598.020(5); *see generally id.* §§ DI 24598.001 *et seq.*, *available at* http://policy.ssa.gov/poms.nsf/subchapterlist!OpenView& Start=1.13.7&RestrictToCategory=04245.[3]

In accordance with the procedure set forth in the SSA POMS, a comparison of Milton's height measurements from birth until he was two years and three months of age, which is the most recent height in the administrative record, leads to the conclusion that, after initially increasing, his growth velocity decreased for approximately seven months from five months of age to one year.  Increasing resumed for the next year, and for the last three months for which data are available, his growth velocity decreased (R. 86, 89, 92, 98, 144,

---

[3]As the Commissioner notes, the POMS are not binding on this court, but they provide a useful guideline and "can be persuasive."  ***Stroup v. Barnhart***, 327 F.3d 1258, 1262 (11th Cir. 2003) (citing ***Bubnis v. Apfel***, 150 F.3d 177, 181 (2d Cir. 1998); ***Davis v. Sec'y of Health and Human Svcs.***, 867 F.2d 336, 340 (6th Cir. 1989); ***Evelyn v. Schweiker***, 685 F.2d 351, 352 n.5 (9th Cir. 1982)).

146, 200, 223).

Therefore, the evidence does not establish the existence of a growth impairment that meets the duration requirement, and the ALJ's conclusion that Milton's impairments did not meet or medically equal a listing within section 100.00 consequently is supported by substantial evidence in the record.

### D.   *Malnutrition*

Listing 105.08 requires:

> Malnutrition, due to demonstrable gastrointestinal disease causing either a fall of 15 percentiles of weight which persists or the persistence of weight which is less than the third percentile (on standard growth charts).   And one of the following:
>
> A.   Stool fat excretion per 24 hours:
>
>> 1.   More than 15 percent in infants less than 6 months.
>> 2.   More than 10 percent in infants 6-18 months.
>> 3.   More than 6 percent in children more than 18 months; or
>
> B.   Persistent hematocrit of 30 percent or less despite prescribed therapy; or
>
> C.   Serum carotene of 40mcg./100 ml. or less; or
>
> D.   Serum albumin of 3.0 gm./100 ml. or less.

§ 404, subpt. P, app. 1.

As Streeter notes, the ALJ found that Milton's "condition does not meet or equal the

severity requirements of section 105.8 [sic] pertaining to malnutrition because his lab studies do not document either stool fat excretion, hematocrit, serum carotene, or serum albumin at the described levels" (R. 20).  Streeter does not argue otherwise and in fact concedes that Milton's laboratory analyses establish his condition as being "slightly above listing level" (Doc. # 11-1, p. 10).  She nevertheless contends that because Milton's numerous lab reports do not include analyses of his "serum carotene," the ALJ erred by failing to order such a test. *Id.* at pp. 8-11.  Her argument fails for at least three reasons.

First, the ALJ is required to order additional evaluations only when the evidence is not sufficient to make a disability determination.  20 C.F.R. § 416.917.  Insufficient serum carotene is one of four possible conditions existence of which would suffice to allow a finding that an otherwise qualifying claimant meets listing 105.08.  A record lacking evidence regarding that particular criterium, however, is not for that reason insufficient to allow for a disability determination, particularly since Streeter has the burden of presenting "specific medical findings that meet the various tests listed under the description of the applicable impairment."  **Bell**, 796 F.2d at 1353.

Second, it is not the ALJ's responsibility to question the quality of Milton's health care.  Presumably, lab reports lacking a test for serum carotene levels indicate that his health care providers were unconcerned with this information, and Streeter's emphasis upon that factor cannot control the court's analysis.

Finally, assuming the ALJ did err, Streeter offers no evidence that Milton was prejudiced.  That is, she has submitted no evidence that his carotene serum levels were at any

time equal to or below the listing requirement, and she points to no symptoms that may be indicative of low serum carotene levels. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding harmless error); *Street v. Barnhart*, 340 F. Supp. 2d 1289, 1294 (M.D. Ala. 2004) (declining to reverse when error was found to be harmless).

Streeter's reliance on *Ford v. Sec'y of Heath & Human Svcs.*, 659 F.2d 66 (5th Cir. 1981), is misplaced. The claimant in *Ford* specifically requested a consultative psychiatric examination, which the ALJ denied without explanation, and the record reflected evidence of the claimant's emotional problems, the severity of which the ALJ failed to discuss. *Id.* at 68-69. Unlike *Ford*, Streeter made no request for additional testing, and, as already noted, nothing in the record suggests that Milton's serum carotene levels were low.

Alternatively, Streeter asks the court to find that Milton's impairments equal the listing.[4] Assuming Milton meets or equals the listing's weight requirement, the record does not allow for the conclusion that his impairments, singularly or in combination, medically equal any of the other very specific requirements, as needed to establish medical equivalency. 20 C.F.R. § 416.926; *Zebley*, 493 U.S. at 531; *Wilkinson*, 847 F.2d at 662; *Bell*, 796 at 1353 (11th Cir. 1986); *Randolph*, 2000 WL 206637, at *4.

Furthermore, only Milton's GER has been associated with his failure to thrive (R. 130, 197, 232), and the medical evidence regarding Milton's other conditions offer little beyond simple diagnoses. Streeter's briefs provide the court no analytical guidance in this

---

[4]Presumably, since she does not contest the ALJ's functional equivalence assessment, she is requesting a finding of medical equivalence.

regard, and the SSA POMS, which provides specific guidelines for determining whether a child's failure to thrive medically equals listing 105.08, counsels against her desired outcome.[5]  POMS § DI 24598.002(C), *available at*  http://policy.ssa.gov/poms.nsf/lnx/ 0424598002!opendocument.

Finally, and perhaps most importantly, statements made by Milton's treating physicians raise questions regarding the quality of care Milton is receiving at home. Milton's primary care physician, Dr. Caroline T. Talamayan, noted that Milton's "poor weight gain/failure to thrive" were "*initially* due to GE Reflux.  Vomiting resolved.  The child continues to gain weight poorly" (R. 197) (emphasis added).  Approximately two weeks earlier, Dr. Syed Ali ["Dr. Ali"], who had seen Milton several times regarding his GER, stated, ***"There are concerns about home environment and compliance with the treatment. The patient was last seen in April and he is followed now after 10 months"*** (R. 190) [Emphasis supplied].

## IV.   CONCLUSION

Therefore, for the reasons discussed herein, it is hereby

ORDERED that the final decision of the Commissioner be and is AFFIRMED.

---

[5]For example, the POMS allows for a finding of medical equivalence if the child's weight meets the listing's "weight criteria" and "his or her weight persists for at least 6 months at less than 75 percent of the median weight for age."  POMS § DI 24598.002(C).  Milton's weight fell below 75 percent of the median weight for his age for only four consecutive months and a total of five months (R. 86, 89, 92, 98, 116, 121, 144, 146, 148, 157, 161, 167, 172,187, 190, 200, 214, 223, 232).

Done this 14th day of November, 2005.


                                              /s/ Vanzetta Penn McPherson
                                              VANZETTA PENN MCPHERSON
                                              UNITED STATES MAGISTRATE JUDGE